Wash, J.,
dissenting.
In this case, I dissent from the opinion of the Court. The bill, it is true, sets out the matter in a lame, confused and somewhat contradictory manner; my understanding of it is, that it charges the purchase to have been made in the name of the father for the use of the son; that is, that the deed for the land had been taken in the name of the father, who thereby became in law the purchaser, but that the money was advanced by the son,;who caused the title to be made to his father, with an understanding that it should be held in trust for the son. From the interrogatories, the answer and the evidence taken on both sides without objection, it seems to me clear, that the respondents so understood the charge as collected from the whole bill. This charge, it seems to me, has been sustained by the testimony taken in the cause. The father before the removal of the parties to Missouri, is shown to have parted with tile forty acres of land reserved for his support upon the division of his estate in Kentucky, to his son James, who undertook to support his father, &c. After-wards the respondent Hugh is seen exchanging with his brother James the portion of land allotted to him in the partition, for James’ laud, and taking upon himself the care and support of their father. Then the old man, James and Hugh are seen uniting in a conveyance of about seventy acres of land, including the family residence and the forty acres reserved originally for the father’s support; and it is clear, that from the proceeds of this sale the lots in dispute were paid for. The terms upon which the transfer from the old man to his son James and upon which the exchange between James and Hugh were made, do not appear. The legal estate to the land conveyed by them jointly, seems to have been, however, in the son Hugh. This fixes the fund out of which the lots were paid for, and this fund was Hugh’s. The improvement of the property by Hugh, his receipt of rent for the buildings erected thereon, his sale of one of the lots and the subsequent conveyance of the old man in accordance with Hugh’s contract, with the ineffectual effort made by him to convey by will the residue of the lots to his son Hugh, taken in connection with the evidence of McCune, that the old man had not been seen or known in the contract for the sale of the lots, and that payment for the same had been made by young Hugh, altogether satisfy my mind that it was intended from the first that the lots should be held in trust by the father for the son. But this is not now a question between the resiid que trust and the trustee: nor between the eeneral creditors of the trustee (or *341 person holding the legal title) and the cestui que trust. The proof in such a case might perhaps he deemed inadequate; here Massie, one of the heirs or distributees of the old man, and the son who might claim as cestui que trust, are seeking, as is clearly shown from their answers, and a mass of testimony in the cause, to place the fund which belongs in equity to the son, out of the reach of Hugh’s creditors, by subjecting it to the stale demand of the brother-in-law, Massie; who had lain by for three or four years during the old man’s lifetime, and for three or four after his death; and who had not only declared that the heirs of old Hugh knew that all the property brought from Kentucky belonged to young Hugh, but had shortly after the death of the old man, executed a release to young Hugh of all his interest as distributee in the estate of the old man, and particularly to the lots in question. So far as Massie and young Hugh are concerned, I think the decree of the Circuit Court should stand.